1  Dana M. Dorsett, SBN 185154
   Jeremy Cook, SBN 283576
2  MOON & DORSETT, PC
   601 W. Fifth St., 8th Floor
3  Los Angeles, CA 90071
   Phone: 213-380-1526
4  dm@danamoon.com

5  Attorneys for Plaintiff
   JAMES MICHAEL BARDEN

6

7

8                  UNITED STATES DISTRICT COURT

9         FOR THE CENTRAL DISTRICT OF CALIFORNIA

10 JAMES MICHAEL BARDEN,          ) **Case No.: 2:16-cv-08468**
                                  )
11          Plaintiff,            ) **COMPLAINT FOR:**
          v.                      ) (1) EXCESSIVE FORCE (42 U.S.C. §
12                                )     1983);
   CITY OF POMONA; CITY OF LOS    ) (2) DENIAL OF MEDICAL CARE (42
13 ANGELES; POMONA POLICE         )     U.S.C. § 1983);
   DEPARTMENT CHIEF PAUL          ) (3) FAILURE TO PROPERLY SCREEN
14 CAPRARO, individually and in his )    AND HIRE (42 U.S.C. § 1983);
   official capacity; LAPD CHIEF  ) (4) FAILURE TO PROPERLY TRAIN
15 CHARLES BECK, individually and )      (42 U.S.C. § 1983);
   in his official capacity; LAPD ) (5) FAILURE TO SUPERVISE AND
16 CAPTAIN DAVID A. LINDSAY,      )     DISCIPLINE (42 U.S.C. § 1983)
   individually and in his official ) (6) MONELL LIABILITY FOR A
17 capacity; and DOES 1-50,       )     PATTERN OF BRUTALITY (42
                                  )     U.S.C. § 1983);
18          Defendants.           ) (7) VIOLATION OF BANE ACT (Cal.
                                  )     Civil Code § 52.1)
19                                ) (8) ASSAULT  (State Law)
                                  ) (9) BATTERY (State Law)
20                                ) (10) NEGLIGENCE (State Law)
                                  ) (11) INTENTIONAL INFLICTION OF

                          Page 1 of 37
─────────────────────────────────────────────────────────
          Complaint for Damages; Demand For Jury Trial

)  EMOTIONAL DISTRESS (State Law)
)
)  **JURY TRIAL DEMANDED**
)

Plaintiff JAMES MICHAEL BARDEN ("Plaintiff") alleges based on

information and belief:

<u>INTRODUCTION</u>

1.      On November 14, 2015, while Plaintiff was lying face down, Pomona

police officers assaulted him while handcuffing him, slamming their radios, fists,

and flashlights into his head for about sixty seconds. As a result of the brutal

beating, Plaintiff suffered from a cracked skull, injury to his right eye, persistent

tingling and numbness on the right side of his face, and other neurological

problems.

2.      Following his injury at the hands of the police officers, Plaintiff was

not given proper medical care. He received no pain medication and was deprived

of food and water for several days. He continues to suffer from pain, neurological

symptoms, and psychological distress resulting from the incident.

<u>JURISDICTION AND VENUE</u>

3.      This action arises under 42 USC § 1983. Jurisdiction is proper in the

United States District Court for the Central District of California under 28 USC §

1331 and 1343(a)(3) and (4).

Complaint for Damages; Demand For Jury Trial

4.     Venue is proper in the Central District of California under 28 USC § 1391(b)(2) because the acts or omissions which form the basis of Plaintiff's claims occurred in Pomona and Los Angeles, CA, within the Central District.

<u>PARTIES</u>

5.     Plaintiff JAMES MICHAEL BARDEN ("Plaintiff") was at all times mentioned herein a citizen of the State of California and resident of Los Angeles County.

6.     Defendant CITY OF POMONA ("Pomona") is a municipality located in and incorporated under the laws of the State of California, operating the Pomona Police Department ("PPD") and employing the individual defendants Does 1-20.

7.     Pomona and PPD have employed individual defendant PAUL CAPRARO ("Capraro") as PPD Chief since March 2014.

8.     At all times since March 2014, Capraro was the final policymaker for PPD, responsible for setting and enforcing the policies, customs, and practices of PPD.

9.     Plaintiff is ignorant of the identities and employers of defendants Does 21-40.

10.     Defendant CITY OF LOS ANGELES ("Los Angeles") is a municipality located

Complaint for Damages; Demand For Jury Trial

In, and incorporated under the laws of, the State of California, operating the Los Angeles Police

Department Jail Division and employing the individual defendants Does 41-50.

11.     Los Angeles and LAPD have employed individual defendant CHARLES BECK ("Beck") as LAPD Chief since November 2009.

12.     Los Angeles and LAPD have employed individual defendant DAVID A. LINDSAY ("Lindsay") as Commanding Officer of the Jail Division, supervisor of the entire jail system for Los Angeles, since April 2011.

13.     At all times since November 2009, Beck was the final policymaker for LAPD, responsible for setting and enforcing the policies, customs, and practices of LAPD.

14.     At all times since April 2011, Lindsay was the final policymaker for the Jail Division of LAPD, responsible for setting and enforcing the policies, customs, and practices of the jail system of Los Angeles.

15.     Pomona and Los Angeles are responsible for Plaintiff's injuries under 42 U.S.C. § 1983 because their official policies, practices, or customs caused Plaintiff's injuries.

16.     Pomona and Los Angeles are also responsible for actions of their employees under a respondeat superior theory under *Robinson v. Solano Cnty.,* 278 F.3d 1007, 1016 (9th Cir. 2002).

Complaint for Damages; Demand For Jury Trial

17.   At all times mentioned in this complaint, Does 1-20 were members of PPD and were duly authorized Pomona employees or agents who were acting within the scope of their employment under color of law and with the complete authority and ratification of Pomona, PPD, and Capraro.

18.   At all times mentioned in this complaint, Does 41-50 were employees of LAPD and were duly authorized Los Angeles employees or agents who were acting within the scope of their employment under color of law and with the complete authority and ratification of Los Angeles, LAPD, Beck, and Lindsay.

19.   Plaintiff is ignorant of the true names and capacities of defendants Does 1-50 and of the facts giving rise to their liability, and will amend this complaint once their identities and the facts giving rise to their liability have been ascertained.

20.   Each defendant is, and at all times mentioned, was, the agent, employee, representative, successor, or assignee of each other defendant. Each defendant, in doing the acts or in omitting to act as alleged in this Complaint, was acting within the scope of his or her actual or apparent authority, or the alleged acts and omissions of each defendant as agent were subsequently ratified and adopted by each other defendant as principal. Each of the individual defendants was in some way responsible for the constitutional violations and torts alleged in this complaint. Each defendant conspired with each other defendant in depriving

Complaint for Damages; Demand For Jury Trial

Plaintiff of his constitutional rights and committing the torts as alleged in this complaint.

21.    In committing the acts alleged in this complaint, Defendants acted knowingly, maliciously, and with reckless or callous disregard for the constitutional rights of Plaintiff, justifying an award of punitive damages under federal law against each individual defendant.

MONELL ALLEGATIONS

22.    Based upon the principles set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), Pomona and Los Angeles are responsible and liable for Plaintiff's injuries under 42 U.S.C. § 1983 as set forth herein because their widespread practices and customs caused Plaintiff's injuries.

POMONA

23.    Specifically, Pomona and PPD maintained the unconstitutional informal practices and customs of failing to sufficiently investigate or review police officers' use of force, failing to enforce proper reporting of use of force, and failing to discipline officers who used excessive force.

24.    The result of this was that officers were given wide leeway to use excessive force, secure in the knowledge that they were extremely unlikely to ever face discipline or even have their use of force reviewed in more than a cursory manner. This created a culture where police officers could and would use excessive

Complaint for Damages; Demand For Jury Trial

1  force without concern for the law and without regard for the rights of the citizens

2  they were sworn to protect.

3       25.    Also, Pomona and PPD failed to give its employees sufficient training

4  in what constitutes excessive force and how they could exercise less forceful

5  alternatives. In particular, Pomona and PPD's training was inadequate in relation to

6  the tasks the particular officers must perform, in that it failed to seriously instruct

7  officers that they could and would be disciplined for use of excessive force in

8  violation of their legal obligations.

9       26.    By failing to so instruct officers, Pomona and PPD's failure to train its

10  employees promoted a culture of excessive force under which officers were aware

11  that their abuses would be tacitly condoned, and therefore demonstrated deliberate

12  indifference to the people with whom the officers come into contact by failing to

13  protect them from such abuses.

14       27.    Pomona and PPD had additional practices and customs which caused

15  Plaintiff's injuries, specifically: (a) failing to properly supervise PPD employees

16  with respect to constitutional limits on use of force, detention, and provision of

17  medical care; (b) failing to provide proper and adequate medical care to inmates

18  and detainees; (c) failing to adequately retrain or discipline officers involved in

19  misconduct; and (d) selecting, retaining, and assigning officers and deputies with

20

Complaint for Damages; Demand For Jury Trial

1  demonstrable propensities for excessive force, violence, dishonesty, and other

2  misconduct.

3      28.    In addition, as part of the culture of excessive force that existed at

4  PPD, Pomona and PPD had the informal practice and custom of *criminally*

5  *prosecuting* victims of police excessive force by inaccurately reporting the victims'

6  behavior as violent, resistant, or uncooperative. This was done to protect officers

7  who used excessive force by covering up their assault and falsely portraying their

8  acts of violence as necessary.

9      29.    It was understood by PPD officers that officers stick together and that

10  they were expected to lie to support other officers' stories and protect other officers

11  from disciplinary charges when necessary, as part of the practices and customs of

12  Pomona and PPD.

13      30.    As part of the practices and customs of Pomona and PPD, it was

14  understood by PPD officers that if the victim of excessive force seemed like he or

15  she would make trouble for officers by complaining, reporting, or filing suit, then

16  it was expected that the officers would join together to protect each other and

17  target the victim, knowing that as police officers, their lies would be believed over

18  the victim's truthful version of events in which excessive force was used.

19      31.    As part of the practices and customs of Pomona and PPD, in order to

20  target the victim, PPD officers would falsely state the victim resisted, causing a

Complaint for Damages; Demand For Jury Trial

wrongful prosecution, and the officers would abuse process by continuing to lie throughout the prosecution.

32.     Pomona and PPD's practices and customs included ratification by the highest levels of authority of the specific unconstitutional acts alleged in this complaint.

33.     Specifically, Capraro was aware of, and continued, the culture of condoning and failing to discipline, investigate, or review cases of excessive force, and of covering it up with wrongful prosecutions, a culture created and maintained by the above practices and customs described in paragraphs 23-32.

34.     Capraro failed to sufficiently investigate and discipline or retrain officers who used excessive force, failed to implement policies sufficient to change the culture and strongly disincentivize excessive force, and failed to implement policies to prevent wrongful prosecutions.

35.     Capraro was personally involved in the violations against Plaintiff in that he allowed the continuance of policies and customs under which unconstitutional practices occurred. Specifically, by failing to implement appropriate policies, Capraro continued the culture, policies, and customs protecting police officers from discipline for excessive force.

36.     Capraro was personally involved in the violations against Plaintiff in that he was grossly negligent in supervising subordinates who committed wrongful

Complaint for Damages; Demand For Jury Trial

acts. Specifically, by failing to implement appropriate policies and failing to properly discipline subordinates for their use of excessive force, Capraro was grossly negligent in supervision.

37.    Capraro was personally involved in the violations against Plaintiff in that he exhibited deliberate indifference to the rights of detainees by failing to act on information that unconstitutional acts were occurring. Specifically, by failing to implement appropriate policies and failing to properly review, investigate, and discipline for excessive force, Capraro did not act sufficiently to prevent further constitutional violations such as the excessive force used against Plaintiff and Capraro therefore exhibited deliberate indifference to the rights of detainees.

38.    Capraro caused the constitutional violations against Plaintiff by condoning an ongoing pattern of constitutional violations, thereby setting in motion a series of acts which he knew or should have known would cause others to inflict constitutional violations. Specifically, by failing to implement appropriate policies and failing to properly review, investigate, and discipline for excessive force, Capraro knew, or should have known, that PPD officers would as a result use excessive force, causing violations of constitutional rights such as that which occurred against Plaintiff.

39.    Capraro, as official policy maker, was aware of the violations of rights described herein, and rather than taking proper steps to discipline officers or ensure

Complaint for Damages; Demand For Jury Trial

that citizens' rights were protected, Capraro condoned, encouraged, fostered, and ratified the unlawful conduct of PPD employees.

40.     Capraro was deliberately indifferent to the risks raised by the above practices and customs, risks that were so obvious he knew or should have known of them. These practices and customs of failing to adequately discipline and train officers caused Plaintiff's injuries because properly trained officers who knew that their actions would be reviewed would not have assaulted Plaintiff.

LOS ANGELES

41.     Los Angeles, Beck, and Lindsay failed to properly supervise LAPD employees with respect to provision of medical care, failed to provide proper and adequate medical care to inmates and detainees, failed to adequately retrain or discipline employees involved in misconduct involving denial of proper medical care, and selected, retained, and assigned employees with demonstrable propensities for misconduct involving denial of proper medical care.

42.     Specifically, Beck and Lindsay were aware of, and continued, the culture of condoning and failing to discipline, investigate, or review cases of denial of medical care, a culture created and maintained by the above practices and customs described in paragraph 41.

43.     Beck and Lindsay failed to sufficiently investigate and discipline or retrain officers who denied medical care, failed to implement policies sufficient to

Complaint for Damages; Demand For Jury Trial

change the culture and strongly disincentivize denial of medical care, and failed to implement policies to prevent denial of medical care.

44.     Beck and Lindsay were personally involved in the violations against Plaintiff in that they allowed the continuance of policies and customs under which unconstitutional practices occurred. Specifically, by failing to implement appropriate policies, Beck and Lindsay continued the culture, policies, and customs protecting police officers from discipline for denial of medical care.

45.     Beck and Lindsay were personally involved in the violations against Plaintiff in that he was grossly negligent in supervising subordinates who committed wrongful acts. Specifically, by failing to implement appropriate policies and failing to properly discipline subordinates for their denial of medical care, Beck and Lindsay were grossly negligent in supervision.

46.     Beck and Lindsay were personally involved in the violations against Plaintiff in that they exhibited deliberate indifference to the rights of detainees by failing to act on information that unconstitutional acts were occurring. Specifically, by failing to implement appropriate policies and failing to properly review, investigate, and discipline for denial of medical care, Beck and Lindsay did not act sufficiently to prevent further constitutional violations such as the denying Plaintiff proper medical care and Beck and Lindsay therefore exhibited deliberate indifference to the rights of detainees.

Complaint for Damages; Demand For Jury Trial

47.     Beck and Lindsay caused the constitutional violations against Plaintiff by condoning an ongoing pattern of constitutional violations, thereby setting in motion a series of acts which he knew or should have known would cause others to inflict constitutional violations. Specifically, by failing to implement appropriate policies and failing to properly review, investigate, and discipline for denial of medical care, Beck and Lindsay were knew, or should have known, that LAPD officers would as a result deny medical care, causing violations of constitutional rights such as that which occurred against Plaintiff.

48.     Beck and Lindsay, as official policy makers, were aware of the violations of rights described herein, and rather than taking proper steps to discipline officers or ensure that citizens' rights were protected, Beck and Lindsay condoned, encouraged, fostered, and ratified the unlawful conduct of LAPD employees.

49.     Beck and Lindsay were deliberately indifferent to the risks raised by the above practices and customs, risks that were so obvious they knew or should have known of them. These practices and customs of failing to adequately discipline and train officers caused the denial of Plaintiff's medical care because properly trained officers who knew that their actions would be reviewed would not have denied Plaintiff medical care.

Complaint for Damages; Demand For Jury Trial

50.    Plaintiff's claims against Pomona, Los Angeles, Capraro, Beck, and Lindsay are based on their maintaining and permitting the above practices and customs described in paragraphs 22-49.

51.    Many of the facts in this case, in particular relating to the policies and practices of PPD and LAPD, are peculiarly within the possession and control of PPD and LAPD, and can only be obtained through discovery in this case.

<u>FACTS</u>

52.    Following a car chase, at approximately 3 AM on the early morning of November 14, 2015, Plaintiff was lying face down in a muddy yard near 1755 W. Wright, Pomona, CA, unmoving.

53.    Does 1-5, Pomona Police Department officers, began walking toward him and shined their flashlights on him, yelled "Stay on the ground. Get on your fucking stomach."

54.    Plaintiff remained still and face down.

55.    Does 1-5 grabbed his arms, twisted them, and cuffed them.

56.    Does 1-5 shouted "Stop resisting! Stop fucking resisting!" although Plaintiff was not resisting.

57.    Does 1-5 assaulted Plaintiff, slamming their radios, fists, and flashlights into his head for about sixty seconds.

58.    As the beating began, Plaintiff started screaming in pain.

Complaint for Damages; Demand For Jury Trial

59.     Plaintiff's face became swollen and bleeding from the beating.

60.     Does 1-5 dragged Plaintiff by his hands and feet through the mud to the driveway where the police car was parked.

61.     Does 1-5 placed Plaintiff, who was still handcuffed, on the curb. He was in agonizing pain and could barely sit up due to the injury he suffered from the beating. He tried to open his eyes but could not open them very far due to the swelling. His vision was blurring, and he had difficulty breathing. His ears were ringing. He was drifting in and out of consciousness.

62.     A supervising officer, Doe 6, was standing near the driveway. After Does 1-5 placed Plaintiff on the curb, Doe 6 asked Does 1-5 what happened. Does 1-5 stated that Plaintiff was reaching for his waistband and resisting arrest.

63.     Does 1-10, Pomona Police Department officers, took pictures of Plaintiff.

64.     Plaintiff fell over, but Does 1-10 yelled at Plaintiff to sit up.

65.     Plaintiff asked for water several times but Does 1-10 refused to give him water.

66.     Does 1-10 propped Plaintiff up with their feet and continued taking pictures.

67.     An ambulance came. Does 1-10 placed Plaintiff on the stretcher. He was given an IV and went unconscious.

Complaint for Damages; Demand For Jury Trial

68.     When Plaintiff woke up he was in the hospital with one hand cuffed to the side of the bed. He was in the custody of the Pomona Police Department.

69.     Plaintiff was in Pomona Valley Hospital for two days.

70.     While in the hospital in the custody of the Pomona Police Department, he was not given food or water, his repeated requests for food and water were ignored, he received no pain medication though he was in severe pain, and he was not allowed proper medical care by the Pomona Police Department.

71.     No one examined him or inquired or informed him regarding his medical condition. He was given a CAT scan, but did not receive the results.

72.     Following his discharge from the Pomona hospital, Plaintiff was taken to the Pomona Police Station and put in a room. He was still in severe pain. He again asked for food and water. He was not given water and only given solidly frozen sack lunches.

73.     He was then transported to LA City Jail. He was put in the jail medical center but was again not given any medical treatment or care. He could not eat because his face was swollen.

74.     After several more days he was brought to USC Medical Center where he was given an additional CAT scan. Again, under the custody of the Pomona Police Department, he was not given any pain medication, despite his incredible pain.

Complaint for Damages; Demand For Jury Trial

75.     He was then taken back to LA City Jail. He was given pain medication but was not examined or asked questions regarding his medical condition and was not informed at all regarding his medical condition.

76.     Since the police beat him, he has been experiencing a great deal of pain and neurological symptoms, including numbness, tingling and pain in the right side of his face and mouth; intensely painful migraines; difficulty breathing; sinus problems; ringing in his ears; a twitching eye; vibrating and blurred vision; vision going in and out of focus; trouble sleeping; nightmares and flashbacks interfering with his sleep; anxiety; panic attacks; depression; difficulty with balance and coordination; and impaired attention, executive functioning, and ability to focus.

77.     During the assault, Does 1-10 worked together as a group to back each other up, provide tacit approval for the incident, and support, assist, and encourage one another's actions.

78.     Each of Does 1-10 failed to intervene or prevent harm when his or her colleagues were depriving Plaintiff of his constitutional rights as stated in this Complaint.

79.     By failing to intervene, each of Does 1-10 additionally violated Plaintiff's constitutional rights.

### FIRST CLAIM FOR RELIEF

Complaint for Damages; Demand For Jury Trial

Excessive Force (42 U.S.C. § 1983)

(Against Pomona, Capraro, and Does 1-40)

80.     Plaintiff realleges paragraphs 1 through 79 of this complaint and incorporates them herein by this reference.

81.     42 U.S.C. § 1983 provides in part "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit at equity, or other proper proceeding for redress."

82.     Plaintiff had a firmly established right under the Fourth, Eighth, and Fourteenth Amendments to be free from official infliction of physical abuse, assault, battery, and intentional infliction of emotional distress, unreasonable search and seizure, and to be free from excessive force being used against him.

83.     Defendants' actions as described herein resulted in the deprivation of these constitutional rights.

84.     Defendants, acting in the performance of their official duties, used excessive force against Plaintiff.

Complaint for Damages; Demand For Jury Trial

85.   On or around November 14, 2015, Plaintiff posed no threat to Defendants when Defendants seized and used excessive force on Plaintiff.

86.   There was no need for the use of any force against Plaintiff because he was completely calm, cooperative, and unresisting at all times during the incident.

87.   The use of force in beating Plaintiff's face and head with radios, fists, and flashlights to the point of cracking his skull was unnecessary, unreasonable, and excessive, and constituted excessive force and unreasonable search and seizure.

88.   In using excessive force, Defendants were acting in accordance with widespread informal practices and customs maintained by Pomona, Capraro, and PPD, as elaborated upon in paragraphs 22-40.

89.   Defendants, acting under the color of statute, ordinances, regulations, customs and usages of the State, knew that use of force in these circumstances was illegal under clearly established law.

90.   The conduct alleged herein caused Plaintiff to be deprived of his civil rights that are protected under the United States Constitution. The conduct alleged herein has also legally, proximately, foreseeably, and actually caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income,

Complaint for Damages; Demand For Jury Trial

medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

91.     The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety, justifying the awarding of punitive and exemplary damages against Defendants in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment.

92.     Plaintiff is also entitled to attorney fees and costs of suit herein.

### SECOND CLAIM FOR RELIEF

Denial of Medical Care (42 U.S.C. § 1983)

(Against all Defendants)

93.     Plaintiff realleges paragraphs 1 through 79 of this complaint and incorporates them herein by this reference.

94.     Defendants failed to provide Plaintiff proper medical care in the wake of the excessive force inflicted upon him, in violation of Plaintiff's constitutional rights under the Fourth, Eighth, and Fourteenth Amendments.

95.     Plaintiff had a serious medical need and Defendants knew that Plaintiff faced a substantial risk of serious harm if his need went untreated.

Complaint for Damages; Demand For Jury Trial

96.     Defendants, acting in the course of their official duties, consciously disregarded that risk by not taking reasonable steps to treat Plaintiff's medical need.

97.     Defendants' denial of medical care exacerbated Plaintiff's physical injuries and was a substantial factor in causing Plaintiff increased trauma, mental and emotional distress, and increased pain and suffering.

98.     Defendants additionally denied Plaintiff proper medical care in that Plaintiff was not provided with proper medical care when in the custody of the Pomona Police Department or in the Los Angeles City Jail.

99.     In denying medical care, Defendants were acting in accordance with widespread informal practices and customs maintained by Pomona, Los Angeles, Capraro, Beck, Lindsay, PPD, and LAPD, as elaborated upon in paragraphs 22-49.

100.    Defendants, acting under the color of statute, ordinances, regulations, customs and usages of the State, knew that denial of medical care in these circumstances was illegal under clearly established law.

101.    The conduct alleged herein caused Plaintiff to be deprived of his civil rights that are protected under the United States Constitution and has also legally, proximately, foreseeably, and actually caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

Complaint for Damages; Demand For Jury Trial

102.   The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety, justifying the awarding of punitive and exemplary damages against Defendants in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment.

103.   Plaintiff is also entitled to attorney fees and costs of suit herein.

## THIRD CLAIM FOR RELIEF

Failure To Properly Screen And Hire (42 U.S.C. § 1983)

(Against All Defendants)

104.   Plaintiff realleges paragraphs 1 through 79 of this complaint and incorporates them herein by this reference.

105.   Defendants, and their agents, servants, and employees, failed to adequately and properly screen and hire Does 1-50, as a matter of informal custom and practice.

106.   The failure of these defendants to properly screen and hire Does 1-50 as a matter of informal custom and practice, in the exercise of their functions, was deliberately indifferent to the constitutional rights of Plaintiff and done with

Complaint for Damages; Demand For Jury Trial

conscious disregard for the dangers of harm and injury to Plaintiff and others similarly situated.

107.   Due to the acts of these defendants, the failure to properly screen and hire police officers and the continued employment of Does 1-50 present a clear and present danger to the residents of Pomona and Los Angeles.

108.   The lack of adequate screening and hiring practices by Defendants evince deliberate indifference to the rights of Plaintiff and others in his position.

109.   These hiring practices led to the employment of Does 1-50 and caused the harms suffered by Plaintiff in this case.

110.   The conduct alleged herein caused Plaintiff to be deprived of his civil rights that are protected under the United States Constitution and has also legally, proximately, foreseeably, and actually caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

111.   The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety, justifying the awarding of punitive and exemplary damages against Defendants in an amount according to proof at the time of trial in order to

Complaint for Damages; Demand For Jury Trial

1  deter Defendants from engaging in similar conduct and to make an example by

2  way of monetary punishment.

3      112.  Plaintiff is also entitled to attorney fees and costs of suit herein.

4                  **FOURTH CLAIM FOR RELIEF**

5              Failure To Properly Train (42 U.S.C. § 1983)

6                    (Against All Defendants)

7

8      113.  Plaintiff realleges paragraphs 1 through 79 of this complaint and

9  incorporates them herein by this reference.

10     114.  Defendants, and their agents, servants, and employees, as a matter of

11 informal custom and practice, failed to maintain adequate and proper training as to

12 the constitutional rights of citizens and arrestees; to prevent the consistent and

13 systematic use of excessive force and denial of medical care; to prevent extra

14 judicial punishment by officers; and to prevent the other violations described

15 herein as elaborated upon in paragraphs 22-49.

16     115.  Defendants failed to provide adequate training to police officers on

17 the proper protocol and procedure on detention and arrest of citizens, the proper

18 use of force, and provision of medical care.

19     116.  Therefore, Defendants, with deliberate indifference, disregarded a

20 duty to protect the public from official misconduct.

Complaint for Damages; Demand For Jury Trial

117.   The failure to promulgate or maintain constitutionally adequate training was done with deliberate indifference to the rights of Plaintiff and others in his position.

118.   The constitutionally infirm lack of adequate training as to Does 1-50 caused Plaintiff's damages.

119.   The conduct alleged herein caused Plaintiff to be deprived of his civil rights that are protected under the United States Constitution and has also legally, proximately, foreseeably, and actually caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

120.   The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety, justifying the awarding of punitive and exemplary damages against Defendants in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment.

121.   Plaintiff is also entitled to attorney fees and costs of suit herein.

### FIFTH CLAIM FOR RELIEF

Failure To Supervise And Discipline (42 U.S.C. § 1983)

Complaint for Damages; Demand For Jury Trial

(Against All Defendants)

122.   Plaintiff realleges paragraphs 1 through 79 of this complaint and incorporates them herein by this reference.

123.   Defendants, and their agents, servants, and employees, as a matter of informal custom and practice, failed to supervise police officers to prevent, deter and punish the unconstitutional and excessive use of force, denial of medical care, and other violations of rights described herein.

124.   Defendants knew or should have known of the dangerous propensities of Does 1-50 but took no steps to supervise them, correct their abuse of authority, or discourage their unlawful use of authority.

125.   To the contrary, Defendants condoned and acquiesced in the abusive behavior of police officers by refusing to retrain them, discipline them, or correct their abusive behavior.

126.   Does 1-50 were not disciplined for their use of excessive force on Plaintiff, their denial of Plaintiff's medical care, or other misconduct committed against Plaintiff.

127.   Defendants were, or should have been, aware that the practices and customs regarding supervision and discipline of officers who violated the civil rights of citizens, committed assault and battery, and denied medical care, as

Complaint for Damages; Demand For Jury Trial

elaborated upon in paragraphs 22-49, were so inadequate that it was obvious that a failure to correct it would result in further incidents of dangerous and lawless conduct perpetrated by their officers.

128. The constitutionally deficient investigation and lack of discipline was done with deliberate indifference to the rights of Plaintiff and others in his position.

129. The lack of adequate supervision and discipline as to Does 1-50 caused Plaintiff's damages.

130. The conduct alleged herein caused Plaintiff to be deprived of his civil rights that are protected under the United States Constitution and has also legally, proximately, foreseeably, and actually caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

131. The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety, justifying the awarding of punitive and exemplary damages against Defendants in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment.

Complaint for Damages; Demand For Jury Trial

132.   Plaintiff is also entitled to attorney fees and costs of suit herein.

### SIXTH CLAIM FOR RELIEF

Monell Liability For A Pattern Of Brutality (42 U.S.C. § 1983)

(Against All Defendants)

133.   Plaintiff realleges paragraphs 1 through 79 of this complaint and incorporates them herein by this reference.

134.   Defendants promulgated and maintained an unconstitutional policy, ordinance, or regulation which allowed its police officers to use excessive force and deny medical care in violation of the rights of citizens.

135.   Defendants were deliberately indifferent to the widespread misconduct on the part of Pomona police officers and LAPD employees in the application of unnecessary and excessive use of force and the denial of medical care.

136.   During the relevant period, Does 1-20 were acting pursuant to the policies of Pomona and Capraro.

137.   During the relevant period, Does 41-50 were acting pursuant to the policies of Los Angeles, Beck, and Lindsay.

138.   Defendants knew or should have known of the risks posed by their policies regarding the improper and excessive use of force and denial of medical care.

Complaint for Damages; Demand For Jury Trial

139.   Defendants were deliberately indifferent to the rights of Plaintiff to be free from, and protected from, harm by the brutality of police officers, to receive proper medical care, and to be secure in his bodily integrity.

140.   As a direct result of Defendants' indifference, Plaintiff was battered, harassed, disturbed, intentionally and negligently inflicted with emotional distress, excessive force was used against him, he was denied medical care, and his Constitutional rights were violated.

141.   The unlawful and illegal conduct of Defendants deprived Plaintiff of the rights, privileges, and immunities secured to him by the Constitutions of the United States and of the State of California.

142.   The conduct alleged herein caused Plaintiff to be deprived of his civil rights that are protected under the United States Constitution which has also legally, proximately, foreseeably and actually caused Barden to suffer physical injury, emotional distress, severe pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

143.   The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety, justifying the awarding of punitive and exemplary damages against Defendants in an amount according to proof at the time of trial in order to

Complaint for Damages; Demand For Jury Trial

1  deter Defendants from engaging in similar conduct and to make an example by

2  way of monetary punishment.

3       144.   Plaintiff is also entitled to attorney fees and costs of suit herein.

4

5  **SEVENTH CLAIM FOR RELIEF**

6  Violation of Bane Act (Cal. Civil Code § 52.1)

7  (Against All Defendants)

8

9       145.   Plaintiff realleges paragraphs 1 through 79 of this complaint and

10  incorporates them herein by this reference.

11       146.   Defendants intentionally interfered with or attempted to interfere with

12  Plaintiff's civil rights by threats, intimidation, or coercion.

13       147.   Defendants, acting under color of law, violated Plaintiff's

14  constitutional rights by using excessive force against him and denying him medical

15  care.

16       148.   Plaintiff was harmed, and Defendants' conduct was a substantial

17  factor in causing Plaintiff's harm.

18       149.   The conduct alleged herein caused Plaintiff to be deprived of his civil

19  rights that are protected under the United States Constitution and has also legally,

20  proximately, foreseeably, and actually caused Plaintiff to suffer physical injury,

Complaint for Damages; Demand For Jury Trial

emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial, including triple damages, punitive damages, and attorneys' fees.

150.    The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety, justifying the awarding of punitive and exemplary damages against Defendants in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment.

151.    Plaintiff is also entitled to attorney fees and costs of suit herein.

**EIGHTH CLAIM FOR RELIEF**

Assault (State Law)

(Against All Defendants)

152.    Plaintiff realleges paragraphs 1 through 79 of this complaint and incorporates them herein by this reference.

153.    Defendants acted intending to cause harmful or offensive contact to Plaintiff.

154.    Plaintiff reasonably believed that he was about to be touched in a harmful or an offensive manner.

Complaint for Damages; Demand For Jury Trial

155.   Defendants' conduct caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

156.   The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety, justifying the awarding of punitive and exemplary damages against Defendants in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment.

**NINTH CLAIM FOR RELIEF**

Battery (State Law)

(Against All Defendants)

157.   Plaintiff realleges paragraphs 1 through 79 of this complaint and incorporates them herein by this reference.

158.   Defendants touched Plaintiff with the intent to harm or offend him.

159.   Plaintiff did not consent to the touching and was harmed by it.

160.   A reasonable person in Plaintiff's situation would have been offended by the touching.

Complaint for Damages; Demand For Jury Trial

161.   Defendants' conduct caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

162.   The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety, justifying the awarding of punitive and exemplary damages against Defendants in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment.

## TENTH CLAIM FOR RELIEF

Negligence (State Law)

(Against All Defendants)

163.   Plaintiff realleges paragraphs 1 through 79 of this complaint and incorporates them herein by this reference.

164.   Defendants acted negligently in their use of force against Plaintiff and in their conduct and denial of medical care committed against Plaintiff.

165.   Plaintiff was harmed and Defendants' negligence was a substantial factor in causing his harm.

Complaint for Damages; Demand For Jury Trial

166.   Defendants' conduct caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

## ELEVENTH CLAIM FOR RELIEF

Intentional Infliction of Emotional Distress (State Law)

(Against all Defendants)

167.   Plaintiff realleges paragraphs 1 through 79 of this complaint and incorporates them herein by this reference.

168.   Defendants' conduct as described herein was outrageous.

169.   Defendants intended to cause Plaintiff emotional distress.

170.   Defendants acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that Plaintiff was present when the conduct occurred.

171.   Plaintiff suffered severe emotional distress from Defendants' harassment.

172.   Defendants' conduct as described herein was a substantial factor in causing Plaintiff's severe emotional distress.

Complaint for Damages; Demand For Jury Trial

173.   Defendants' conduct caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

174.   The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety, justifying the awarding of punitive and exemplary damages against Defendants in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment.

**REQUEST FOR RELIEF**

Plaintiff requests entry of judgment in his favor and against Defendants as follows:

For compensatory damages in an amount to be determined at trial, including physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial;

For punitive damages against individual Defendants in an amount to be proven at trial;

For triple damages;

Complaint for Damages; Demand For Jury Trial

For reasonable costs of this suit and attorneys' fees; and

For such further relief as the court may deem just, proper, and appropriate.

Dated:  November 14, 2016                    MOON & DORSETT, PC




                                             By:_____/s/_____
                                             Dana M. Dorsett
                                             Jeremy Cook
                                             dm@danamoon.com
                                             Attorneys for Plaintiff
                                             JAMES MICHAEL BARDEN

Complaint for Damages; Demand For Jury Trial

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.


Dated:  November 14, 2016                    MOON & DORSETT, PC



By: _____/s/_____
Dana M. Dorsett
Jeremy Cook
dm@danamoon.com
Attorneys for Plaintiff
JAMES MICHAEL BARDEN