1  Dana M. Dorsett, SBN 185154
   Jeremy Cook, SBN 283576
2  MOON & DORSETT, PC
   601 W. Fifth St., 8th Floor
3  Los Angeles, CA 90071
   Phone: 213-380-1526
4  dm@danamoon.com

5  Attorneys for Plaintiff
   JAMES MICHAEL BARDEN

6

7

8                UNITED STATES DISTRICT COURT

9        FOR THE CENTRAL DISTRICT OF CALIFORNIA

10 JAMES MICHAEL BARDEN,          ) **Case No.: 2:16-cv-08468**
                                  )
11            Plaintiff,          ) **SECOND AMENDED COMPLAINT**
          v.                      ) **FOR:**
12                                ) (1) EXCESSIVE FORCE (42 U.S.C. §
   CITY OF POMONA; COUNTY OF      )     1983);
13 LOS ANGELES; POMONA            ) (2) DENIAL OF MEDICAL CARE (42
   POLICE DEPARTMENT CHIEF        )     U.S.C. § 1983);
14 PAUL CAPRARO, individually and ) (3) FAILURE TO PROPERLY SCREEN
   in his official capacity; LOS  )     AND HIRE (42 U.S.C. § 1983);
15 ANGELES COUNTY SHERIFF         ) (4) FAILURE TO PROPERLY TRAIN
   JIM MCDONNELL, individually    )     (42 U.S.C. § 1983);
16 and in his official capacity; LOS ) (5) FAILURE TO SUPERVISE AND
   ANGELES SHERIFF'S              )     DISCIPLINE (42 U.S.C. § 1983)
17 DEPARTMENT CUSTODY             ) (6) MONELL LIABILITY FOR A
   DIVISION CHIEF ERIC PARRA,     )     PATTERN OF BRUTALITY (42
18 individually and in his official )     U.S.C. § 1983);
   capacity; OFFICER AUSTIN       ) (7) VIOLATION OF BANE ACT (Cal.
19 DOSSEY (PPD 42108); OFFICER     )     Civil Code § 52.1)
   O'MAHONY (PPD 42081); OFFICER  ) (8) ASSAULT  (State Law)
20 OFFICER RALPH RIVERA (PPD      ) (9) BATTERY (State Law)
   40590);  OFFICER RONALD        ) (10) NEGLIGENCE (State Law)

Page 1 of 43

Second Amended Complaint for Damages; Demand For Jury Trial

RAMIREZ (PPD 41460); OFFICER ) (11) INTENTIONAL INFLICTION OF
C. EBLI (PPD 296); OFFICER ) EMOTIONAL DISTRESS (State Law)
CAVANAUGH; and DOES 1-50, )
                             **JURY TRIAL DEMANDED**
      Defendants.
_____ )

Plaintiff JAMES MICHAEL BARDEN ("Plaintiff") alleges based on information and belief:

## INTRODUCTION

1.    On November 14, 2015, while Plaintiff was lying face down, Pomona police officers assaulted him while handcuffing him, slamming their radios, fists, and flashlights into his head for about sixty seconds. As a result of the brutal beating, Plaintiff suffered from a cracked skull, injury to his right eye, persistent tingling and numbness on the right side of his face, and other neurological problems.

2.    Following his injury at the hands of the police officers, Plaintiff was not given proper medical care. He received no pain medication and was deprived of food and water for several days. He received no neurological or mental health examinations or treatment. He continues to suffer from pain, neurological symptoms, and psychological distress resulting from the incident.

## JURISDICTION AND VENUE

Second Amended Complaint for Damages; Demand For Jury Trial

3.     This action arises under 42 USC § 1983. Jurisdiction is proper in the United States District Court for the Central District of California under 28 USC § 1331 and 1343(a)(3) and (4).

4.     Venue is proper in the Central District of California under 28 USC § 1391(b)(2) because the acts or omissions which form the basis of Plaintiff's claims occurred in Pomona and Los Angeles, CA, within the Central District.

<u>PARTIES</u>

5.     Plaintiff JAMES MICHAEL BARDEN ("Plaintiff") was at all times mentioned herein a citizen of the State of California and resident of Los Angeles County.

6.     Defendant CITY OF POMONA ("Pomona") is a municipality located in and incorporated under the laws of the State of California, operating the Pomona Police Department ("PPD") and employing the individual defendants Does 1-20.

7.     Pomona and PPD have employed individual defendant PAUL CAPRARO ("Capraro") as PPD Chief since March 2014.

8.     At all times since March 2014, Capraro was the final policymaker for PPD, responsible for setting and enforcing the policies, customs, and practices of PPD.

9.     Plaintiff is ignorant of the identities and employers of defendants Does 21-40.

Second Amended Complaint for Damages; Demand For Jury Trial

10.     Defendant COUNTY OF LOS ANGELES ("Los Angeles") is a county located in, and incorporated under the laws of, the State of California, operating the Los Angeles Sheriff's Department ("LASD") and Men's Central Jail and employing the individual defendants Does 41-50.

11.     Los Angeles and LASD have employed individual defendant JIM MCDONNELL ("McDonnell") as Sheriff since December 1, 2014.

12.     Los Angeles and LASD have employed individual defendant ERIC PARRA ("Parra") as Los Angeles Sheriff's Department Custody Division Chief, responsible for Men's Central Jail, since December 1, 2014.

13.     At all times since December 1, 2014, McDonnell was the final policymaker for LASD, responsible for setting and enforcing the policies, customs, and practices of LASD.

14.     At all times since December 1, 2014, Parra was the final policymaker for the Custody Division of LASD, responsible for setting and enforcing the policies, customs, and practices of Men's Central Jail.

15.     Pomona and Los Angeles are responsible for Plaintiff's injuries under 42 U.S.C. § 1983 because their official policies, practices, or customs caused Plaintiff's injuries.

Second Amended Complaint for Damages; Demand For Jury Trial

16.     Pomona and Los Angeles are also responsible for actions of their employees under a respondeat superior theory under *Robinson v. Solano Cnty.,* 278 F.3d 1007, 1016 (9th Cir. 2002).

17.     At all times mentioned in this complaint, Does 1-20 were members of PPD and were duly authorized Pomona employees or agents who were acting within the scope of their employment under color of law and with the complete authority and ratification of Pomona, PPD, and Capraro.

18.     At all times mentioned in this complaint, Does 41-50 were employees of LASD and were duly authorized Los Angeles employees or agents who were acting within the scope of their employment under color of law and with the complete authority and ratification of Los Angeles, LASD, McDonnell, and Parra.

19.     Plaintiff is ignorant of the true names and capacities of defendants Does 1-50 and of the facts giving rise to their liability, and will amend this complaint once their identities and the facts giving rise to their liability have been ascertained.

20.     Each defendant is, and at all times mentioned, was, the agent, employee, representative, successor, or assignee of each other defendant. Each defendant, in doing the acts or in omitting to act as alleged in this Complaint, was acting within the scope of his or her actual or apparent authority, or the alleged acts and omissions of each defendant as agent were subsequently ratified and adopted

Second Amended Complaint for Damages; Demand For Jury Trial

by each other defendant as principal. Each of the individual defendants was in some way responsible for the constitutional violations and torts alleged in this complaint. Each defendant conspired with each other defendant in depriving Plaintiff of his constitutional rights and committing the torts as alleged in this complaint.

21.    In committing the acts alleged in this complaint, Defendants acted knowingly, maliciously, and with reckless or callous disregard for the constitutional rights of Plaintiff, justifying an award of punitive damages under federal law against each individual defendant.

## MONELL ALLEGATIONS

22.    Based upon the principles set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), Pomona and Los Angeles are responsible and liable for Plaintiff's injuries under 42 U.S.C. § 1983 as set forth herein because their widespread practices and customs caused Plaintiff's injuries.

## POMONA

23.    Specifically, Pomona and PPD maintained unconstitutional informal practices and customs as follows: officers, when dealing with a detainee or arrestee they considered to be a person who deserved poor treatment, would as a regular practice and custom gather in a group around the victim while he was unresisting

and lying on the ground, and use their batons to beat their victim while telling him to stop resisting or claiming that he was resisting.

24.    Several well-publicized cases have followed this pattern, such as the beating by a group of Pomona officers of off-duty LAPD officer Sergio Arreola on April 11, 2012. In a January 24, 2014 article on the attack, the Los Angeles Times noted that on a recording of the beating, a Pomona officer repeatedly told Arreola to stop resisting while Arreola stated that he was not resisting and begged onlookers to record the scene.

25.    In another recent well-publicized case, a group of Pomona officers gathered around and brutally beat the unresisting sixteen-year-old Christian Aguilar on September 16, 2015, claiming Aguilar had hit one of the officers when he had not. The beating was recorded on video by onlooker Robert Hanson.

26.    Other similar examples in which officers falsely claimed the victim was resisting include the assault on the unresisting Cynthia Villalpando by two Pomona officers on March 6, 2015, and the repeated violent strikes on the head of Hildred Oliney on October 13, 2015 while he was lying on the ground.

27.    Pomona and PPD maintained additional unconstitutional informal practices and customs in that supervising officers all the way up the chain of command, including Capraro, were well aware of this problem and these events, but consistently, as a general rule, in the above-mentioned cases and others, failed

Second Amended Complaint for Damages; Demand For Jury Trial

to sufficiently investigate or review police officers' use of force, failed to enforce proper reporting of use of force, and failed to retrain and discipline officers who used excessive force.

28.    Specifically, Pomona, PPD, and Capraro had the informal practice and custom of finding that the officers in the above-mentioned cases and others were virtually always justified in their use of force.

29.    The result of this was that officers were given wide leeway to use excessive force, secure in the knowledge that they were extremely unlikely to ever face discipline or even have their use of force reviewed in more than a cursory manner. This created a culture where police officers could and would use excessive force without concern for the law and without regard for the rights of the citizens they were sworn to protect.

30.    In addition, as part of the culture of excessive force that existed at PPD, Pomona and PPD had the informal practice and custom of *criminally prosecuting* victims of police excessive force by inaccurately reporting the victims' behavior as violent, resistant, or uncooperative. This was done to protect officers who used excessive force by covering up their assault and falsely portraying their acts of violence as necessary.

31.    It was understood by PPD officers that officers stick together and that they were expected to lie to support other officers' stories and protect other officers

Second Amended Complaint for Damages; Demand For Jury Trial

from disciplinary charges when necessary, as part of the practices and customs of Pomona and PPD.

32.     As part of the practices and customs of Pomona and PPD, it was understood by PPD officers that if the victim of excessive force seemed like he or she would make trouble for officers by complaining, reporting, or filing suit, then it was expected that the officers would join together to protect each other and target the victim, knowing that as police officers, their lies would be believed over the victim's truthful version of events in which excessive force was used.

33.     As part of the practices and customs of Pomona and PPD, in order to target the victim, PPD officers would falsely state the victim resisted, causing a wrongful prosecution, and the officers would abuse process by continuing to lie throughout the prosecution.

34.     Also, Pomona and PPD failed to give its employees sufficient training in what constitutes excessive force and how they could exercise less forceful alternatives. In particular, Pomona and PPD's training was inadequate in relation to the tasks the particular officers must perform, in that it failed to seriously instruct officers that they could and would be disciplined for use of excessive force in violation of their legal obligations.

35.     By failing to so instruct officers, Pomona and PPD's failure to train its employees promoted a culture of excessive force under which officers were aware

Second Amended Complaint for Damages; Demand For Jury Trial

that their abuses would be tacitly condoned, and therefore demonstrated deliberate indifference to the people with whom the officers come into contact by failing to protect them from such abuses. Pomona, PPD, and Capraro had the custom and practice of selecting, retaining, and assigning officers and deputies with demonstrable propensities for excessive force, violence, dishonesty, and other misconduct.

36.     In sum, Pomona, Capraro, and PPD as a whole had the informal practice and custom of looking the other way despite knowing of the repeated patterns of abusive conduct by Pomona officers. While lip service was given to exercising proper care in the use of force, it was known and understood that excessive force would not be appropriately punished or properly investigated. These practices and customs caused Plaintiff's injuries.

37.     Pomona and PPD had additional practices and customs which caused Plaintiff's injuries, specifically failing to provide proper and adequate medical care to victims of excessive force, and being indifferent to the medical needs of victims of excessive force and other vulnerable individuals whom officers come in contact with.

38.     As with excessive force, this pattern has been demonstrated in several recent cases. On March 16, 2013, after committing excessive force against Sonia Montoya, Pomona officers denied her medical attention.

Second Amended Complaint for Damages; Demand For Jury Trial

1    39.    Additionally, in a 2016 case brought by the Public Counsel Law

2    Center against Pomona, resulting in a six-figure settlement, Pomona police officers

3    demonstrated their indifference to medical needs by unreasonably confiscating

4    medication from homeless Pomona residents, including blood pressure medication

5    and insulin from Veronica Delgado, HIV medication from a Jane Doe and a John

6    Roe, arthritis and thyroid medication from William Kelly, blood pressure and pain

7    medication from Tommy Singleton, asthma medication from James Spry, and

8    schizophrenia medication from James Morgan.

9    40.    The denial of medical care went hand-in-hand with the excessive

10    force, in that Pomona officers, after brutally beating unresisting victims as

11    described above, would as a practice and custom fail to then give them proper

12    medical treatment, as occurred in the above-mentioned cases, although it was clear

13    that the victims needed it.

14    41.    In particular, neurological and mental health examination treatment

15    was routinely ignored and denied after Pomona officers inflicted head injuries in

16    cases where it was clear that the victim needed medical attention to prevent

17    deterioration.

18    42.    Pomona and PPD's practices and customs as described above

19    included ratification by the highest levels of authority of the specific

20    unconstitutional acts alleged in this complaint.

Second Amended Complaint for Damages; Demand For Jury Trial

43.     Specifically, Capraro was aware of, and continued, the policies and customs of condoning and failing to discipline, investigate, or review cases of excessive force, of covering them up with wrongful prosecutions, and of denying medical care, a culture created and maintained by the above practices and customs described in paragraphs 23-42.

44.     Capraro was aware that officers routinely, as a matter of practice and custom, beat the head of unresisting victims and routinely, as a matter of practice and custom, failed to provide proper medical care afterwards, including mental health and neurological examinations when it was obvious that they were urgent and necessary.

45.     Capraro was aware that these problems were being ignored and that investigations into these issues routinely, as a matter of practice and custom, found that officers did not commit misconduct, and failed to properly and meaningfully address any of these informal practices or customs.

46.     Capraro failed to sufficiently investigate and discipline or retrain officers who used excessive force or denied medical care, failed to implement policies sufficient to change the culture and strongly disincentivize excessive force and denying medical care, and failed to implement policies to prevent wrongful prosecutions and denial of medical care.

Second Amended Complaint for Damages; Demand For Jury Trial

47.     Capraro was personally involved in the violations against Plaintiff in that he allowed the continuance of policies and customs under which unconstitutional practices occurred. Specifically, by failing to implement appropriate policies, Capraro continued the culture, policies, and customs protecting police officers from discipline for excessive force and denial of medical care.

48.     Capraro was personally involved in the violations against Plaintiff in that he was grossly negligent in supervising subordinates who committed wrongful acts. Specifically, by failing to implement appropriate policies and failing to properly discipline subordinates for their use of excessive force and denial of medical care, Capraro was grossly negligent in supervision.

49.     Capraro was personally involved in the violations against Plaintiff in that he exhibited deliberate indifference to the rights of detainees by failing to act on information that unconstitutional acts were occurring. Specifically, by failing to implement appropriate policies and failing to properly review, investigate, and discipline for excessive force and denial of medical care, Capraro did not act sufficiently to prevent further constitutional violations such as the excessive force and denial of medical care used against Plaintiff, and Capraro therefore exhibited deliberate indifference to the rights of detainees.

Second Amended Complaint for Damages; Demand For Jury Trial

50.     Capraro caused the constitutional violations against Plaintiff by condoning an ongoing pattern of constitutional violations, thereby setting in motion a series of acts which he knew would cause others to inflict constitutional violations. Specifically, by failing to implement appropriate policies and failing to properly review, investigate, and discipline for excessive force and denial of medical care, Capraro knew that PPD officers would as a result use excessive force and deny medical care, causing violations of constitutional rights such as those which occurred against Plaintiff.

51.     Capraro, as official policy maker, was aware of the violations of rights described herein, and rather than taking proper steps to discipline officers or ensure that citizens' rights were protected, Capraro condoned, encouraged, fostered, and ratified the unlawful conduct of PPD employees.

52.     Capraro was deliberately indifferent to the risks raised by the above practices and customs, risks that were so obvious he knew of them. These practices and customs of failing to adequately discipline and train officers caused Plaintiff's injuries because properly trained officers who knew that their actions would be reviewed would not have assaulted Plaintiff.

LOS ANGELES

53.     Los Angeles, McDonnell, and Parra failed to properly supervise LASD employees with respect to provision of medical care, failed to provide

Second Amended Complaint for Damages; Demand For Jury Trial

proper and adequate medical care to inmates and detainees, failed to adequately retrain or discipline employees involved in misconduct involving denial of proper medical care, and selected, retained, and assigned employees with demonstrable propensities for misconduct involving denial of proper medical care.

54.     Specifically, Los Angeles had a custom and practice of failing to provide proper medical care, including mental health treatment and neurological treatment and examination when it was clearly necessary, to inmates who were victims of head injuries inflicted by excessive force.

55.     McDonnell and Parra were aware of, and continued, the culture of condoning and failing to discipline, investigate, or review cases of this denial of medical care, a culture created and maintained by the above practices and customs described above.

56.     McDonnell and Parra failed to sufficiently investigate and discipline or retrain officers who denied medical care, failed to implement policies sufficient to change the culture and strongly disincentivize denial of medical care, and failed to implement policies to prevent denial of medical care.

57.     McDonnell and Parra were personally involved in the violations against Plaintiff in that they allowed the continuance of policies and customs under which unconstitutional practices occurred. Specifically, by failing to implement

Second Amended Complaint for Damages; Demand For Jury Trial

1   appropriate policies, McDonnell and Parra continued the culture, policies, and

2   customs protecting police officers from discipline for denial of medical care.

3        58.    McDonnell and Parra were personally involved in the violations

4   against Plaintiff in that they were grossly negligent in supervising subordinates

5   who committed wrongful acts. Specifically, by failing to implement appropriate

6   policies and failing to properly discipline subordinates for their denial of medical

7   care, McDonnell and Parra were grossly negligent in supervision.

8        59.    McDonnell and Parra were personally involved in the violations

9   against Plaintiff in that they exhibited deliberate indifference to the rights of

10  detainees by failing to act on information that unconstitutional acts were occurring.

11  Specifically, by failing to implement appropriate policies and failing to properly

12  review, investigate, and discipline for denial of medical care, McDonnell and Parra

13  did not act sufficiently to prevent further constitutional violations such as the

14  denying Plaintiff proper medical care and McDonnell and Parra therefore exhibited

15  deliberate indifference to the rights of detainees.

16       60.    McDonnell and Parra caused the constitutional violations against

17  Plaintiff by condoning an ongoing pattern of constitutional violations, thereby

18  setting in motion a series of acts which they knew or should have known would

19  cause others to inflict constitutional violations. Specifically, by failing to

20  implement appropriate policies and failing to properly review, investigate, and

Second Amended Complaint for Damages; Demand For Jury Trial

discipline for denial of medical care, McDonnell and Parra knew, or should have known, that LASD officers would as a result deny medical care, causing violations of constitutional rights such as that which occurred against Plaintiff.

61.     McDonnell and Parra, as official policy makers, were aware of the violations of rights described herein, and rather than taking proper steps to discipline officers or ensure that citizens' rights were protected, McDonnell and Parra condoned, encouraged, fostered, and ratified the unlawful conduct of LASD employees.

62.     McDonnell and Parra were deliberately indifferent to the risks raised by the above practices and customs, risks that were so obvious they knew or should have known of them. These practices and customs of failing to adequately discipline and train officers caused the denial of Plaintiff's medical care because properly trained officers who knew that their actions would be reviewed would not have denied Plaintiff medical care.

63.     Plaintiff's claims against Pomona, Los Angeles, Capraro, McDonnell, and Parra are based on their maintaining and permitting the above practices and customs.

64.     Many of the facts in this case, in particular relating to the policies and practices of PPD and LASD, are peculiarly within the possession and control of PPD and LASD, and can only be obtained through discovery in this case.

Second Amended Complaint for Damages; Demand For Jury Trial

1

<u>FACTS</u>

2     65.     Following a car chase, at approximately 3 AM on the early morning

3 of November 14, 2015, Plaintiff was lying face down in a muddy yard near 1755

4 W. Wright, Pomona, CA, unmoving.

5     66.     A group of Pomona Police Department officers, including OFFICER

6 AUSTIN DOSSEY (PPD 42108); OFFICER O'MAHONY (PPD 42081);

7 OFFICER RALPH RIVERA (PPD 40590);  OFFICER RONALD RAMIREZ

8 (PPD 41460); OFFICER C. EBLI (PPD 296); OFFICER CAVANAUGH; and

9 Does 1-5 ("Assaulting Officers") began walking toward him and shined their

10 flashlights on him, yelled "Stay on the ground. Get on your fucking stomach."

11     67.     Plaintiff remained still and face down.

12     68.     Dossey, with the assistance of the other officers, grabbed his arms,

13 twisted them, and cuffed them.

14     69.     Dossey, along with several other officers, shouted "Stop resisting!

15 Stop fucking resisting!" although Plaintiff was not resisting.

16     70.     Dossey, along with several other officers, assaulted Plaintiff,

17 slamming their radios, fists, and flashlights into his head for about sixty seconds.

18     71.     As the beating began, Plaintiff started screaming in pain.

19     72.     Plaintiff's face became swollen and bleeding from the beating.

20

Second Amended Complaint for Damages; Demand For Jury Trial

73.    Dossey, along with several other officers, dragged Plaintiff by his hands and feet through the mud to the driveway where the police car was parked.

74.    Dossey, along with several other officers, placed Plaintiff, who was still handcuffed, on the curb. He was in agonizing pain and could barely sit up due to the injury he suffered from the beating. He tried to open his eyes but could not open them very far due to the swelling. His vision was blurring, and he had difficulty breathing. His ears were ringing. He was drifting in and out of consciousness.

75.    Plaintiff heard one of the officers ask what happened and another officer stated that Plaintiff was reaching for his waistband and resisting arrest.

76.    Several of the officers then took pictures of Plaintiff.

77.    Plaintiff fell over, but several officers yelled at Plaintiff to sit up.

78.    Plaintiff asked for water several times but no officer gave him water.

79.    Several officers propped Plaintiff up with their feet and continued taking pictures.

80.    An ambulance came. Plaintiff was placed on the stretcher. He was given an IV and went unconscious.

81.    When Plaintiff woke up he was in the hospital with one hand cuffed to the side of the bed. He was in the custody of the Pomona Police Department.

82.    Plaintiff was in Pomona Valley Hospital for two days.

Second Amended Complaint for Damages; Demand For Jury Trial

83.     While in the hospital in the custody of the Pomona Police Department, he was not given food or water, his repeated requests for food and water were ignored, he received no pain medication though he was in severe pain, and he was not allowed proper medical care by the Pomona Police Department.

84.     No one examined him or inquired or informed him regarding his medical condition. He was given a CAT scan, but did not receive the results.

85.     From the injuries that were inflicted on him and from the actions the officers took, it was clear that Plaintiff needed neurological examination and treatment, as well as mental health examination and treatment, as soon as possible, in order to prevent further deterioration of his condition.

86.     From the way Plaintiff was walking, speaking, and acting, it was clear to any observing individual he was suffering from mental health and neurological problems and had a serious medical need for examination and treatment. He never received mental health or neurological examination or treatment, however.

87.     Following his discharge from the Pomona hospital, Plaintiff was taken to the Pomona Police Station and put in a room. He was still in severe pain. He again asked for food and water. He was not given water and only given solidly frozen sack lunches.

Second Amended Complaint for Damages; Demand For Jury Trial

88.     He was then transported to Men's Central Jail. He was put in the jail medical center but was again not given any medical treatment or care. He could not eat because his face was swollen.

89.     After several more days he was brought to USC Medical Center where he was given an additional CAT scan. Again, under the custody of the Pomona Police Department, he was not given any pain medication, despite his incredible pain.

90.     He was then taken back to Men's Central Jail. He was given pain medication but was not examined or asked questions regarding his medical condition and was not informed at all regarding his medical condition.

91.     Assaulting Officers and the other officials he spoke to and was under the care of intentionally failed to provide him with mental health or neurological treatment.

92.     Plaintiff's injuries put him at a serious risk of suffering neurological and mental health harm if he did not receive urgent treatment.

93.     Since the police beat him, he has been experiencing a great deal of pain and neurological symptoms, including numbness, tingling and pain in the right side of his face and mouth; intensely painful migraines; difficulty breathing; sinus problems; ringing in his ears; a twitching eye; vibrating and blurred vision; vision going in and out of focus; trouble sleeping; nightmares and flashbacks

Second Amended Complaint for Damages; Demand For Jury Trial

interfering with his sleep; anxiety; panic attacks; depression; difficulty with balance and coordination; and impaired attention, executive functioning, and ability to focus.

94.     During the assault, Assaulting Officers worked together as a group to back each other up, provide tacit approval for the incident, and support, assist, and encourage one another's actions.

95.     Each of Assaulting Officers failed to intervene or prevent harm when his or her colleagues were depriving Plaintiff of his constitutional rights as stated in this Complaint.

96.     By failing to intervene, each of Assaulting Officers additionally violated Plaintiff's constitutional rights.

97.     Plaintiff complied with the provisions of the California Government Claims Act, Cal. Gov. Code § 810 *et seq.*, by submitting claims of his November 14, 2015 injuries, containing the information required by Cal. Gov. Code § 910, to Pomona and Los Angeles on May 10, 2016.

**FIRST CLAIM FOR RELIEF**

Excessive Force (42 U.S.C. § 1983)

(Against Pomona, Capraro, Assaulting Officers, and Does 1-40)

Second Amended Complaint for Damages; Demand For Jury Trial

98. Plaintiff realleges paragraphs 1 through 97 of this complaint and incorporates them herein by this reference.

99. 42 U.S.C. § 1983 provides in part "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit at equity, or other proper proceeding for redress."

100. Plaintiff had a firmly established right under the Fourth, Eighth, and Fourteenth Amendments to be free from official infliction of physical abuse, assault, battery, and intentional infliction of emotional distress, unreasonable search and seizure, and to be free from excessive force being used against him.

101. Defendants' actions as described herein resulted in the deprivation of these constitutional rights.

102. Defendants, acting in the performance of their official duties, used excessive force against Plaintiff.

103. On or around November 14, 2015, Plaintiff posed no threat to Defendants when Defendants seized and used excessive force on Plaintiff.

Second Amended Complaint for Damages; Demand For Jury Trial

104.   There was no need for the use of any force against Plaintiff because he was completely calm, cooperative, and unresisting at all times during the incident.

105.   The use of force in beating Plaintiff's face and head with radios, fists, and flashlights to the point of cracking his skull was unnecessary, unreasonable, and excessive, and constituted excessive force and unreasonable search and seizure.

106.   In using excessive force, Defendants were acting in accordance with widespread informal practices and customs maintained by Pomona, Capraro, and PPD, as elaborated upon in paragraphs 22-40.

107.   Defendants, acting under the color of statute, ordinances, regulations, customs and usages of the State, knew that use of force in these circumstances was illegal under clearly established law.

108.   The conduct alleged herein caused Plaintiff to be deprived of his civil rights that are protected under the United States Constitution. The conduct alleged herein has also legally, proximately, foreseeably, and actually caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

Second Amended Complaint for Damages; Demand For Jury Trial

109.   The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety, justifying the awarding of punitive and exemplary damages against Defendants in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment.

110.   Plaintiff is also entitled to attorney fees and costs of suit herein.

## SECOND CLAIM FOR RELIEF

Denial of Medical Care (42 U.S.C. § 1983)

(Against all Defendants)

111.   Plaintiff realleges paragraphs 1 through  97 of this complaint and incorporates them herein by this reference.

112.   Defendants failed to provide Plaintiff proper medical care in the wake of the excessive force inflicted upon him, in violation of Plaintiff's constitutional rights under the Fourth, Eighth, and Fourteenth Amendments.

113.   Assaulting Officers and the other officials he spoke to and was under the care of intentionally failed to provide him with mental health or neurological treatment.

Second Amended Complaint for Damages; Demand For Jury Trial

114.   Plaintiff's injuries put him at a serious risk of suffering neurological and mental health harm if he did not receive urgent treatment.

115.   Defendants knew that Plaintiff risked additional harm if he did not receive

116.   Defendants, acting in the course of their official duties, consciously disregarded that risk by not taking reasonable steps to treat Plaintiff's medical need.

117.   Defendants' denial of medical care exacerbated Plaintiff's physical injuries and was a substantial factor in causing Plaintiff increased trauma, mental and emotional distress, and increased pain and suffering.

118.   Based on Plaintiff's appearance and demeanor, which clearly indicated he had suffered serious head trauma and neurological symptoms, a reasonable officer or medical staff member would under the circumstances have been aware of the high degree of risk involved if Plaintiff did not get immediate treatment.

119.   Defendants additionally denied Plaintiff proper medical care in that Plaintiff was not provided with proper medical care, including mental health and neurological examination and treatment, when in the custody of the Pomona Police Department or in the Men's Central Jail, causing his condition to become worse.

120.   In denying medical care, Defendants were acting in accordance with widespread informal practices and customs maintained by Pomona, Los Angeles,

Second Amended Complaint for Damages; Demand For Jury Trial

Capraro, McDonnell, Parra, PPD, and LASD, as elaborated upon in paragraphs 22-49.

121.   Defendants, acting under the color of statute, ordinances, regulations, customs and usages of the State, knew that denial of medical care in these circumstances was illegal under clearly established law.

122.   The conduct alleged herein caused Plaintiff to be deprived of his civil rights that are protected under the United States Constitution and has also legally, proximately, foreseeably, and actually caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

123.   The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety, justifying the awarding of punitive and exemplary damages against Defendants in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment.

124.   Plaintiff is also entitled to attorney fees and costs of suit herein.

### THIRD CLAIM FOR RELIEF

Failure To Properly Screen And Hire (42 U.S.C. § 1983)

Second Amended Complaint for Damages; Demand For Jury Trial

(Against All Defendants)

125.   Plaintiff realleges paragraphs 1 through  97 of this complaint and incorporates them herein by this reference.

126.   Defendants, and their agents, servants, and employees, failed to adequately and properly screen and hire Does 1-50, as a matter of informal custom and practice.

127.   The failure of these defendants to properly screen and hire Does 1-50 as a matter of informal custom and practice, in the exercise of their functions, was deliberately indifferent to the constitutional rights of Plaintiff and done with conscious disregard for the dangers of harm and injury to Plaintiff and others similarly situated.

128.   Due to the acts of these defendants, the failure to properly screen and hire police officers and the continued employment of Does 1-50 present a clear and present danger to the residents of Pomona and Los Angeles.

129.   The lack of adequate screening and hiring practices by Defendants evince deliberate indifference to the rights of Plaintiff and others in his position.

130.   These hiring practices led to the employment of Does 1-50 and caused the harms suffered by Plaintiff in this case.

Second Amended Complaint for Damages; Demand For Jury Trial

131.   The conduct alleged herein caused Plaintiff to be deprived of his civil rights that are protected under the United States Constitution and has also legally, proximately, foreseeably, and actually caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

132.   The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety, justifying the awarding of punitive and exemplary damages against Defendants in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment.

133.   Plaintiff is also entitled to attorney fees and costs of suit herein.

## FOURTH CLAIM FOR RELIEF

### Failure To Properly Train (42 U.S.C. § 1983)

### (Against All Defendants)

134.   Plaintiff realleges paragraphs 1 through  97 of this complaint and incorporates them herein by this reference.

Second Amended Complaint for Damages; Demand For Jury Trial

135.   Defendants, and their agents, servants, and employees, as a matter of informal custom and practice, failed to maintain adequate and proper training as to the constitutional rights of citizens and arrestees; to prevent the consistent and systematic use of excessive force and denial of medical care; to prevent extra judicial punishment by officers; and to prevent the other violations described herein as elaborated upon in paragraphs 22-49.

136.   Defendants failed to provide adequate training to police officers on the proper protocol and procedure on detention and arrest of citizens, the proper use of force, and provision of medical care.

137.   Therefore, Defendants, with deliberate indifference, disregarded a duty to protect the public from official misconduct.

138.   The failure to promulgate or maintain constitutionally adequate training was done with deliberate indifference to the rights of Plaintiff and others in his position.

139.   The constitutionally infirm lack of adequate training as to Does 1-50 caused Plaintiff's damages.

140.   The conduct alleged herein caused Plaintiff to be deprived of his civil rights that are protected under the United States Constitution and has also legally, proximately, foreseeably, and actually caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear,

Second Amended Complaint for Damages; Demand For Jury Trial

trauma, and humiliation, and further damages according to proof at the time of trial.

141.    The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety, justifying the awarding of punitive and exemplary damages against Defendants in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment.

142.    Plaintiff is also entitled to attorney fees and costs of suit herein.

### FIFTH CLAIM FOR RELIEF

Failure To Supervise And Discipline (42 U.S.C. § 1983)

(Against All Defendants)

143.    Plaintiff realleges paragraphs 1 through  97 of this complaint and incorporates them herein by this reference.

144.    Defendants, and their agents, servants, and employees, as a matter of informal custom and practice, failed to supervise police officers to prevent, deter and punish the unconstitutional and excessive use of force, denial of medical care, and other violations of rights described herein.

Second Amended Complaint for Damages; Demand For Jury Trial

145.   Defendants knew or should have known of the dangerous propensities of Does 1-50 but took no steps to supervise them, correct their abuse of authority, or discourage their unlawful use of authority.

146.   To the contrary, Defendants condoned and acquiesced in the abusive behavior of police officers by refusing to retrain them, discipline them, or correct their abusive behavior.

147.   Does 1-50 were not disciplined for their use of excessive force on Plaintiff, their denial of Plaintiff's medical care, or other misconduct committed against Plaintiff.

148.   Defendants were, or should have been, aware that the practices and customs regarding supervision and discipline of officers who violated the civil rights of citizens, committed assault and battery, and denied medical care, as elaborated upon in paragraphs 22-49, were so inadequate that it was obvious that a failure to correct it would result in further incidents of dangerous and lawless conduct perpetrated by their officers.

149.   The constitutionally deficient investigation and lack of discipline was done with deliberate indifference to the rights of Plaintiff and others in his position.

150.   The lack of adequate supervision and discipline as to Does 1-50 caused Plaintiff's damages.

Second Amended Complaint for Damages; Demand For Jury Trial

151.   The conduct alleged herein caused Plaintiff to be deprived of his civil rights that are protected under the United States Constitution and has also legally, proximately, foreseeably, and actually caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

152.   The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety, justifying the awarding of punitive and exemplary damages against Defendants in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment.

153.   Plaintiff is also entitled to attorney fees and costs of suit herein.

## SIXTH CLAIM FOR RELIEF

Monell Liability For A Pattern Of Brutality (42 U.S.C. § 1983)

(Against All Defendants)

154.   Plaintiff realleges paragraphs 1 through  97 of this complaint and incorporates them herein by this reference.

Second Amended Complaint for Damages; Demand For Jury Trial

155.   Defendants promulgated and maintained an unconstitutional policy, ordinance, or regulation which allowed its police officers to use excessive force and deny medical care in violation of the rights of citizens.

156.   Defendants were deliberately indifferent to the widespread misconduct on the part of Pomona police officers and LASD employees in the application of unnecessary and excessive use of force and the denial of medical care.

157.   During the relevant period, Does 1-20 were acting pursuant to the policies of Pomona and Capraro.

158.   During the relevant period, Does 41-50 were acting pursuant to the policies of Los Angeles, McDonnell, and Parra.

159.   Defendants knew or should have known of the risks posed by their policies regarding the improper and excessive use of force and denial of medical care.

160.   Defendants were deliberately indifferent to the rights of Plaintiff to be free from, and protected from, harm by the brutality of police officers, to receive proper medical care, and to be secure in his bodily integrity.

161.   As a direct result of Defendants' indifference, Plaintiff was battered, harassed, disturbed, intentionally and negligently inflicted with emotional distress,

Second Amended Complaint for Damages; Demand For Jury Trial

excessive force was used against him, he was denied medical care, and his Constitutional rights were violated.

162.   The unlawful and illegal conduct of Defendants deprived Plaintiff of the rights, privileges, and immunities secured to him by the Constitutions of the United States and of the State of California.

163.   The conduct alleged herein caused Plaintiff to be deprived of his civil rights that are protected under the United States Constitution which has also legally, proximately, foreseeably and actually caused Barden to suffer physical injury, emotional distress, severe pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

164.   The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety, justifying the awarding of punitive and exemplary damages against Defendants in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment.

165.   Plaintiff is also entitled to attorney fees and costs of suit herein.

## SEVENTH CLAIM FOR RELIEF

Second Amended Complaint for Damages; Demand For Jury Trial

Violation of Bane Act (Cal. Civil Code § 52.1)

(Against All Defendants)

166.   Plaintiff realleges paragraphs 1 through  97 of this complaint and incorporates them herein by this reference.

167.   Defendants intentionally interfered with or attempted to interfere with Plaintiff's civil rights by threats, intimidation, or coercion.

168.   Defendants, acting under color of law, violated Plaintiff's constitutional rights by using excessive force against him and denying him medical care.

169.   Plaintiff was harmed, and Defendants' conduct was a substantial factor in causing Plaintiff's harm.

170.   The conduct alleged herein caused Plaintiff to be deprived of his civil rights that are protected under the United States Constitution and has also legally, proximately, foreseeably, and actually caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial, including triple damages, punitive damages, and attorneys' fees.

171.   The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights,

Second Amended Complaint for Damages; Demand For Jury Trial

1  welfare, and safety, justifying the awarding of punitive and exemplary damages

2  against Defendants in an amount according to proof at the time of trial in order to

3  deter Defendants from engaging in similar conduct and to make an example by

4  way of monetary punishment.

5      172.   Plaintiff is also entitled to attorney fees and costs of suit herein.

6                    **EIGHTH CLAIM FOR RELIEF**

7                        Assault (State Law)

8                      (Against All Defendants)

9

10     173.   Plaintiff realleges paragraphs 1 through  97 of this complaint and

11  incorporates them herein by this reference.

12     174.   Defendants acted intending to cause harmful or offensive contact to

13  Plaintiff.

14     175.   Plaintiff reasonably believed that he was about to be touched in a

15  harmful or an offensive manner.

16     176.   Defendants' conduct caused Plaintiff to suffer physical injury,

17  emotional distress, pain and suffering, loss of income, medical expenses, fear,

18  trauma, and humiliation, and further damages according to proof at the time of

19  trial.

20

Second Amended Complaint for Damages; Demand For Jury Trial

177.   The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety, justifying the awarding of punitive and exemplary damages against Defendants in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment.

## NINTH CLAIM FOR RELIEF

### Battery (State Law)

### (Against All Defendants)

178.   Plaintiff realleges paragraphs 1 through  97 of this complaint and incorporates them herein by this reference.

179.   Defendants touched Plaintiff with the intent to harm or offend him.

180.   Plaintiff did not consent to the touching and was harmed by it.

181.   A reasonable person in Plaintiff's situation would have been offended by the touching.

182.   Defendants' conduct caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

Second Amended Complaint for Damages; Demand For Jury Trial

183.   The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety, justifying the awarding of punitive and exemplary damages against Defendants in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment.

## TENTH CLAIM FOR RELIEF

### Negligence (State Law)

### (Against All Defendants)

184.   Plaintiff realleges paragraphs 1 through 97 of this complaint and incorporates them herein by this reference.

185.   Defendants acted negligently in their use of force against Plaintiff and in their conduct and denial of medical care committed against Plaintiff.

186.   Plaintiff was harmed and Defendants' negligence was a substantial factor in causing his harm.

187.   Defendants' conduct caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

Second Amended Complaint for Damages; Demand For Jury Trial

## ELEVENTH CLAIM FOR RELIEF

Intentional Infliction of Emotional Distress (State Law)

(Against all Defendants)

188.   Plaintiff realleges paragraphs 1 through  97 of this complaint and incorporates them herein by this reference.

189.   Defendants' conduct as described herein was outrageous.

190.   Defendants intended to cause Plaintiff emotional distress.

191.   Defendants acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that Plaintiff was present when the conduct occurred.

192.   Plaintiff suffered severe emotional distress from Defendants' harassment.

193.   Defendants' conduct as described herein was a substantial factor in causing Plaintiff's severe emotional distress.

194.   Defendants' conduct caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

Second Amended Complaint for Damages; Demand For Jury Trial

195.   The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety, justifying the awarding of punitive and exemplary damages against Defendants in an amount according to proof at the time of trial in order to deter Defendants from engaging in similar conduct and to make an example by way of monetary punishment.

## REQUEST FOR RELIEF

Plaintiff requests entry of judgment in his favor and against Defendants as follows:

For compensatory damages in an amount to be determined at trial, including physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial;

For punitive damages against individual Defendants in an amount to be proven at trial;

For triple damages;

For reasonable costs of this suit and attorneys' fees; and

For such further relief as the court may deem just, proper, and appropriate.

Dated:  April 21, 2017                          MOON & DORSETT, PC

Second Amended Complaint for Damages; Demand For Jury Trial

1

2                                              By:_____/s/_____

3                                              Dana M. Dorsett
Jeremy Cook

4                                              dm@danamoon.com
Attorneys for Plaintiff

5                                              JAMES MICHAEL BARDEN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

Second Amended Complaint for Damages; Demand For Jury Trial

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.


Dated:  January 20, 2017                    MOON & DORSETT, PC


                                            By: _____/s/_____
                                            Dana M. Dorsett
                                            Jeremy Cook
                                            dm@danamoon.com
                                            Attorneys for Plaintiff
                                            JAMES MICHAEL BARDEN

Second Amended Complaint for Damages; Demand For Jury Trial